May it please the Court, Jonathan E. Moore on behalf of the Appellants, Yongevity, Int'l, etc. This is on appeal from a decision in the United States District Court from the Southern District. The court below erroneously denied an anti-SLAPP motion, as well as a motion to compel arbitration on a subset of the claims. The review here is de novo in both counts. At the outset, WCAIA has challenged jurisdiction as to the commercial speech determinations below for counterclaims 7, 9, 10, and 11, which in parts were said to justify invocation of the commercial speech exemption of the anti-SLAPP statute, but in other parts the anti-SLAPP for those very same counterclaims and the underlying documentation germane or issues factual points germane apply to both. So we believe that jurisdiction lies appropriately under a collateral order doctrine. So doesn't parole tell us that we're supposed to look at allegation by allegation, not complaint by complaint? So in other words, you can strike an allegation. That's what we said in Baral. Yes, you could strike an allegation. So the court, the district court, in striking the, in saying that the commercial speech, three of the statements were commercial speech, then we can't review them, right? Isn't that the teaching of Brazil? Well, I think because if you look at the Hilton case, for example, and the general standard of inextricably intertwined for collateral order doctrine application, in this instance, the court is looking at the very same subject matter in reaching its grant determination and its commercial speech determination. And they're all within the same counterclaim. And for this court to... By the same subject matter, you don't mean the same allegations, right? Because it's pretty specific that what the district court said was commercial speech was an email and Joel Wallach's oral statements to distributors and something by, I think it was Michelle Wallach's email. So the district court identifies three very specific categories of speech, which it says is commercial speech. What the court has done actually is say, okay, with respect to the issuance of a verified complaint and allegations related thereto in these same documents, it is granted. And with respect to the overall document it's saying, the position of these people justifies invocation of the commercial speech doctrine. The problem with this is that in order to assess the commercial speech doctrine, you have to look at the whole document. And in order to assess... But the whole point is we shouldn't address the commercial speech doctrine. Well, that's the statutory provision. But what I'm saying is that's the state statutory provision here in federal court under the collateral order doctrine. In order to decide this case at all, I would argue, you have to look at the whole thing because... Didn't we vote different in Brazil? I mean, in Brazil we said we're not going to look at the allegations that were denied on the basis of, I think it was public something. I don't remember what the basis was. But the other exception... Yeah, here it's quite different because... Public interest. Thank you. I think it was public something. Here it's quite different because in this case they are truly inextricably intertwined. When you start to address the... context. Is that correct? So there's not a case that supports us doing that. So we would have to distinguish Brazil and say, but here where they're inextricably intertwined, we're not precluded from looking at the district court's denial on the basis of commercial speech. Do I understand that? I actually think it's consistent with the entire line of cases that established the collateral order doctrine. And that is because in the interest of justice, a healthy judiciary, judicial system, as it said there, you cannot parse these claims and produce a sound adjudication of a matter that is supposed to be dealt with at the pleading stage. And so because of the nature of the way the court addressed this, with the overlapping rationales and application to the very same set of facts and the same underlying documentation, I think as you address the anti-slap aspects, you must also address it. It's also the case that Wakaya has argued to the court that the entire body of all of the counterclaims ought to be assessed under the commercial speech doctrine. And to address a response to that argument, you would, of course, have to take a look at the commercial speech doctrine. Well, picking up on that, in terms of the commercial speech, on the things that the district judge concluded were not covered by the commercial speech exception, isn't – I mean, aren't they essentially covered by the same motivation that prompted the judge to conclude that the other items were covered by the commercial speech exception? I know that was an awful question. Sorry. It is, and I think that goes to the point that it's inextricably intertwined with the merits of the anti-slap in general, even those that he's granted. Now, if I may progress somewhat on that, as to the commercial speech exception argument, it is wholly vacuous in that it doesn't meet the elements of the commercial speech four-part test in order for the exception to apply, in particular, under the statute, the first two sections, which deal with the proposal of – well, first, that it must arise from a statement by a person that – about that person or a person's business competitors' business operations. Certain of them do. One with respect to Dr. Wallach does not, because he's neither an officer, director, shareholder, employee, or distributor. He founded the thing, though, right? He did. He founded it directly contrary to the evidence that we cite in the brief. There is no factual basis for that determination. It's erroneous. And then with regard to that the statement must be for the purpose of obtaining approval for promoting or securing sales or commercial transactions in a person's goods or services, there's absolutely nothing in these documents which does that. There's nothing here which proposes a sale of anything. In fact, these documents fall into line with the cases that establish that simply communicating a business, communicating about a competitor is not enough, that you actually have to show that the purpose is for the sale or promotion of goods or services, which there's nothing in these documents to support that conclusion. And that element is indispensable, of course, all four elements. Right now you're on element two or element three, the one you just talked about? Right now I'm on element three. And three is, each of these elements is indispensable, but three in particular is indispensable and was not found here. So you're saying that if the speech doesn't directly concern a purchase or sale then it's not covered. So the district court's theory, if I'm getting it right, was that basically this was all about trying to keep the salespeople in the fold. Right. It's a communication in the case of the email, the Wallach email, not the Dr. Wallach communication in the car, but the email Wallach email. That communication is to distributors within the company, telling them of the company's position with regard to a suit filed in Utah by Wakaya. In the hopes that they don't jump ship, basically. Well, I think that's an inference that you would draw, perhaps, but it's not in it. And you have to have in it, this is a specific statutory requirement, that it not foreclose every businessman from communicating, or businesswoman, from communicating to their employees, but rather one that has to hold out a purpose of selling, promoting, and so on, which is utterly absent from these documents. See, I guess I'm having a little bit of a hard time with that because it seems to me that if what you're doing is trying to tell your sales force, don't pay any attention to those other people over there, all the bad stuff they're saying about us, stay in the fold. That seems to me that that does have something, and the whole business depends on them selling the items. It seems to me that that is for the purpose of obtaining, or securing, or promoting sales or leases. It has nothing to do with the sale, it has nothing to do with the lease, it has nothing to do with promoting a sale, it has nothing to do with holding out something for sale. But the case talks about, or the Simpson, I guess, is the case that talks about, it's a Supreme Court case, talks about not to make a sale, it's for the purpose of securing sales. Right. And that's a leap of faith beyond the document here. I mean, just telling your employees, stay with the company, is not selling something. In an abstract world of all competition in the universe, telling someone, stay with our company, well, you'd say, well, that might be the economic interest of the company, keeping people here and not going there, but that's too attenuated, the statute's very specific, has to arise from a statement by that person, about that person's, or a business competitor's business operations of goods, in the first instance, to, the statement must be made for the purpose of obtaining approval for, promoting, or securing sales in goods or services, not here. Proceeding on, however, if we may, proceeding on to the argument on the merits of the anti-SLAPP, there are six statements at issue here. Two of these statements, the statements fall into two general categories, the first we discussed, the commercial speech, the second statements were ones where they published legal pleadings or their contents, and it was said to involve parts of counterclaims 6, 7, 9, and 10, whereas the commercial speech statement involved parts of counterclaim 7, 9, 10, and 11. All right. With regard to the three statements that are remaining for discussion, the YTY press release, Young Jevons press release, the provision of legal pleadings to Wakaya's Vice President Rick Hansen, and the provision of legal pleadings to the online trade publication for the network marketing community, BFH.org, all of these are simply, if you take them one by one, either communications of the actual document pled in the case, the verified complaint, or a Now those are classic examples of what is under the litigation privilege, and they are also classic examples of what cannot be defamation, because they are true. And in addition to them being true, let's take a look at the individual contexts in which they are communicated. Now, if we take a look at the Wallach email, the Wallach email was communicated to distributors within Young Jevity. There's nothing in it that's defamatory. It does not cause obloquy or contempt or ridicule or hatred of any kind. It's a dispassionate description of the position of the company in response to litigation. It simply cannot qualify as defamation. There could be no injury. There could be no defamatory injury. There's no nexus between what was said and injury, and none is pled. In the pleading or the counterclaims, there's no pleading as to the gist or sting of defamation. No pleading as to the nature of the publication being one that you could tie into defamatory injury, and no specific claim of injury of any kind. With regard to the press release, the press release is five sentences in length. It announces the filing of the complaint in the court, and then it describes the causes of action that are there. That's it. No editorialization further. No further discussion. Classic example of what is protected under the litigation privilege. Classic example of what is protected under the fair report privilege. If the court's order were to be upheld on these points, we would have an effective gag order. We would have a precedent which stands for the proposition that lawyers may not announce to the universe that they have filed a suit that's publicly filed on the court's docket, that individuals may not inform other people by sending them a copy of the complaint. This cannot be defamation. It simply cannot be under any reasonable reading of litigation privilege or fair report privilege. Did you want to save time for rebuttal? Yes. Thank you. You've got a minute left. All right. Thank you very much. All right. Good morning, Your Honor. It's Jonathan Hafen on behalf of the Wakaiya Party sitting with me at counsel table. It's Ms. Cynthia Love.  that the analysis of this case is very important. As far as jurisdiction, if you look at the statute 425.17e, that's the one that says if there is a finding by the lower court that there is commercial speech, then there is no appellate review as to the cause of action. And here we have causes of action where the court has already found that there was commercial speech. So what do we do about Baral? Baral seems to say that we can do that and that we just strike the allegations. And from my perspective, I think that you look at Barzal and then you look at, well, are you talking about Barzil? No, Baral. Because Baral was the one in the mid-eighties. And that's the one that I think is in trouble. I pronounce your one Brazil or something like that? I like Brazil better. That's easier for me to remember. So I'm talking about Baral. Yeah. The way that I see it, if you, well, you've got two pieces. You've got the statute itself, which says it's cause of action based. And with respect to findings of commercial speech, there's no interlocutory writing appeal. What counsel has argued is, well, we should look at the, rather than looking at that issue, what we ought to do is just say it's a collateral order. Because this statute can't confer jurisdiction anyway because it's a state statute. That's what led to all of this. But there, as Judge Gould said in his concurring opinion in Planned Parenthood this year, it's not a collateral order under anti-SLAPP. And the reason it's not a collateral order, if you look at, once we get past the commercial speech exception on which our clients have prevailed, the causes of action are going forward, then you look at, you're looking at privileges and you're looking at other issues. So getting back to Baral v. Schmidt, I just want to make sure I understand your argument. Because that case, the California Supreme Court is talking about mixed causes of action that combine. So a cause of action that combines allegations of activity protected by the statute with allegations of unprotected activity. And it says the correct procedure is to strike the, or not consider the allegations of the unprotected activity and just consider the protected activity. And so the analysis under the SLAPP suit statute, according to the California Supreme Court as of 2016, is, in this case, we would not look at the commercial speech, at the denial of the motion to strike commercial speech allegations, but we would continue to look at the other ones. But the only way you get there, because that's a, that this is a collateral order, that the other issues are a collateral order, and here's why they can't be. We heard counsel admit they're inextricably intertwined with the facts. If you get to prong two, that is looking at the merits of the case. You're looking at, it's a very low bar, you have a minimal probability of prevailing down the road. And here, in order to look at that, you have to look at the merits of the rest of the case. Okay, so you're also asking for an extension of our law. There's no, is there a case that supports that in this SLAPP suit context? Well, I'm, I am going on with Judge Gould and his concurring opinion of Planned Parenthood from this year, and I recognize that would have to be taken up on bond. Uh-huh. Okay. So, that's a loser. The case has changed since the original decision in the 1980s. Okay, so assuming that we are going to look at the case and we're not barred jurisdictionally, do you want to address the argument about the, I'm particularly interested in the, the verified complaint and the various, um, uh, press releases and distribution of the verified complaint, which the, the district court thought at least some of those were not protected? Uh, indeed I do want to address that. And let me first, uh, talk about, I think, what you're addressing, Your Honor, and that is, with respect to the contents of the verified complaint in the proceeding itself, if it were to just sit there, then we are not claiming that that is inappropriate, we're not claiming that that somehow is, uh, outside the litigation privilege. What we are doing here is saying, okay, timeout, let's take, let's take a step back here and look at what's happening. If you look at 425.17, the reason that statute exists is because companies were abusing it. And so, what the California legislature said was, you know, if you have commercial speech then it's not anti-SLAPP, there's no right of appeal, look at this case and what this case is. This is a case that was brought by one competitor against another competitor. The anti-SLAPP action is, doesn't even relate to the first complaint here, that was brought by Ingevity, it relates to counterclaims. And the allegation here, you look at it across the board, is that there were numerous false statements that were made in the public, not the verified complaint that was filed, but the republication of the complaint, what Dr. Wallach was telling the distributors, what Steve Wallach was sending out in emails to all of the Ingevity distributors, 120,000 of them, as they say in the complaint, was intended to destroy WCAIA at the time of its launch in early 2016. You look at all of those and then you can go through the specific elements and see clearly that you don't have, that they all qualify as commercial speech. And let me talk about, first of all, element number one, all of the speakers are selling WCAIA, sorry, Ingevity products, Dr. Wallach is, no question, Steve Wallach is the CEO, no question, and they are statements about either Ingevity's goods, services, or business operations, or WCAIA's. And you have allegations here, I was surprised to hear, well there's nothing in these statements that is defamatory. They call these people criminals. Well, to the extent the press release is merely repeating the elements of the complaint, why isn't that protected by the litigation privilege? If the press release, again, it would depend on how it went out. So you're saying merely repeating the elements of the complaint, or saying a complaint was filed and here is what the claims were in the complaint, is not protected by litigation privilege? I don't think so, and here's why. I mean, that would be a really bad idea, and that's because you could circumvent the litigation, you could circumvent defamation actions, tortious interference actions, false light actions, and business disparagement actions, which is what is harming my client right now, by filing all kinds of outrageous things in a complaint. That's protected. Sure, no problem. Then you issue a press release, and you say, hey everybody, this is the law firm that issues the press release, and says, hey everybody, take a look at this complaint, and here are what we say, here are the things that we say in the complaint. People are criminals. So what's the case that supports that? They cite Abraham for the proposition that you can't explain the complaint to interested parties. There are a number of cases that, there are a number of cases that talk about this that we cited in our pleadings. Let me just talk about a couple of those. Aren't there cases after Abraham that kind of suggest it was wrongly decided? Yeah, there are. One of them is, and I'm not sure if it addresses Abraham, but R.G. Ntieri, Cal App 2017, statements to the press generally are not privileged under California Civil Code section 47. They don't achieve the objects of litigation, they're seeking vindication of the public, of somebody's view of the litigation, and that's not right. That would just be an example of those cases, and I don't know of a case that says that you can, my co-counsel wants me to also remind the court about the importance of the functional connection. And I think that's very important here as well, and that's something that Judge Tashima you talked about in the Rodriguez case, that if you send something out to the world, 120,000 people through Steve Wallach's email, you send it to Business for Home and have it distributed to its 100,000 emails and 4 to 5 million visitors, that's not privileged under the litigation privilege because there is no function. Your point about abuse is that what you don't want to do is have a rule that says I can file a lawsuit saying my next door neighbor's an axe murderer and then send that to everybody and say, well, it's just litigation privilege. You said it a lot better than I did. That's exactly what my point is. And with the functional requirement, those statements about the litigation have to advance the litigation. And so examples of that would be, look, if I write a settlement letter to somebody, I'm advancing the litigation. If I send something out to people informing them of the status of the lawsuit and they are witnesses, they've provided documents, these are the cases that have been cited by longevity, well, that is advancing the ball. But if you simply take what has been said, horrible things that have been said about my clients in a complaint and then spew them out throughout the world to people that have no legitimate interest, then you don't meet that functional requirement. But the case is to talk about like an in-between scenario for people, third parties who are interested and have some interest in the litigation and its result, right? Well, there's yes, right. I agree with that. But then you have to define what interest is. And interest is the functional requirement that you recognized in the Rodriguez decision in 2002. You have you have to be advancing something. It's not just a prurient interest. You know, everybody may have some sort of general interest in the fact that there is litigation. That's not enough to say we can spew venom on hundreds of thousands of people and say, well, you must be interested in this because you're in the multilevel marketing industry. So opposing counsel also argues fair reporting privilege, which the district court said required more factual investigations of the fair reporting privilege, of course, would allow the distribution of the elements of the complaint. Yes. Thanks so much for raising that. I wanted to get to that. The only piece of this that deals with the fair reporting privilege is business for home. And the allegation is the business for home is a captive publication arm of longevity. There's no editorial control. But is there any is there any definition of what constitutes a fair reporting privilege? The court seemed fairly vague on that. It has to go to a public journal. And so what does that mean? So what so so clearly it's a journal. It's a trade journal and it's public because it's distributed to the public. So what makes it not a public journal? Well, that's something that we're disputing. And our argument is it can't be a public journal because its contents, as far as what it disseminates, is controlled by longevity. And what's the journal would be the New York or sorry, the Los Angeles Times, for example. What says that? Because now we have we no longer have newspapers. We just have opinion pieces and and now everything's over the web and whatever. So so what what case or what do you rely on for that proposition? One thing that we do know is websites are not public journals. And if everything has become a website like the New York Times website, isn't a public journal. I would think maybe the New York Times website, if that is the what's distributed to me and I'm sorry, I don't have a case off the top of my head, but I think the exercise of editorial control ultimately is what's the most important. But here we don't get to the fair reporting privilege because the only outlet that is subject to even arguably a public journal is business for home. And this is a motion to dismiss. We're entitled to all of the all of our allegations as being true, as well as all disputed issue of fact as to the one fair report privilege opportunity in the court correctly found under Rogers. You get discovery on that. I guess my question was I was confused by the district court's ruling because I couldn't see what the question of fact was. First, you have to know what the legal standard is before you can know what facts you would need to produce. So I didn't see what the factual question actually was in this on this issue. The factual question is whether or not business for home exercises any editorial control. The district court didn't say that it didn't say that that was a requirement of editorial control. I don't think it did. No, but that's what we've engaged on in discovery for the last year and a half. I've just got a couple of minutes. I'd like to talk about arbitration issue again. We've got a significant jurisdictional block here, as I see it. If you have we don't have a motion to compel arbitration, we don't have a motion to stay the litigation. What we have is a 12 B6 motion to dismiss. And one of the bases for the motion to dismiss that there was a that the contract is has an arbitration. But what's the effect of the district court case sending the a similar case or identical case, substantially identical to arbitration? I don't think the Utah, the Utah, the Salt Lake City case, you know, the Salt Lake City case, we just argued that one in front of the 10th Circuit and that that what happened in the 10th Circuit, and I suppose the court could take judicial notice, is that it dismissed the case and and went along with essentially a waiver argument that the case in California had gone on and there had been dozens of depositions and 500. So the district court sent it to arbitration that that was appealed. Is that correct? The district court said that there may be an applicable arbitration provision here, including as to what kind of which hadn't signed up for arbitration. But the district court said, I'm not going to get to that issue. I'm going to leave that up to an arbitrator to decide. Right. It's on appeal with the 10th Circuit is whether it's appropriate for an arbitrator to decide that issue. And we don't think it is. Does that have preclusive effect on on our case in deciding the arbitration? I don't believe so. I don't think this court has jurisdiction to look at the arbitration. And your reason for that is that the motion was called the wrong thing. So if it had said motion to dismiss or stay, that would have done it. No, it was because they're asking a court to dismiss. They are going to the court and saying we want the court to do something. I got to tell you, in my experience as a district judge, people call that motion the wrong thing all the time. I doesn't mean it doesn't mean that they're not teeing up the issue. Well, if they were teeing up the issue, Your Honor, what they should have done is they should have moved to stay that litigation until that issue was resolved. And instead, we spent a year and a half and more money than I can even count on five, six hundred docket entries, all kinds of third party discovery that they wouldn't have had had it been in arbitration, 50 subpoenas to third parties, numerous depositions in third parties that prejudiced my client. And therefore, there is a waiver, even if there is jurisdiction to decide the issue. And I don't think there is. Thank you. I'll initially address the arbitration issue. The motion to dismiss was not just a motion to dismiss. It was a motion to dismiss in favor of arbitration, which is written into the judge's order. It was treated by the opponent as a motion to compel arbitration. It was treated by the court in the same way. And the parties argued that this matter needs to go to arbitration. So under the Federal Arbitration Act, under the provision that concerns following the arbitration agreement provisions, it expressly concerns those legal pleadings that direct the case to arbitration, which this was. With regard to the points about arbitration, there is no prejudice here because the most of the counts are not arbitrable. There are only five counts that would go into arbitration. OK, it's a subset of the universe of all the counts. So when you say there are only five counts going, is that what the district court ordered in this case? Yeah, the whole proceeding concern counterclaims one through five to go to arbitration. That's what they ruled. That's a limit of the district court's order? The district court's order is limited to counterclaims one through five for the issue of arbitration. And with regard to all of the other counts, they were non-arbitrable. Well, just a minute. That's the point. I mean, nobody argued that the other counts might be arbitrable? No one. With regard to the point of prejudice, if I may, I have a little time. No, you're over time, so just please wrap up. All right. With regard to the point of prejudice, there is no prejudice here because we filed our motion within 14 days of their filing their amended complaint. The court set the schedule. The court didn't act on our motion for 12, 18 months. And in the interim, there are all these other claims. We didn't move to stay because the majority of the case is non-arbitrable. So then with regard to... I'm sorry, you're over time. All right. Thank you. So we appreciate your argument. The case of Langevity International versus Andreoli is submitted and we are adjourned for this session.
judges: Tashima, Ikuta, Kennelly